# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FERNANDO ROMERO,
*doing business as*
FERNY'S ELECTRONICS,

     Plaintiff,

**v.**                                                      1:16-cv-1335-RB-LF

HARTFORD CASUALTY INSURANCE COMPANY
*a foreign corporation,* and
JOHN DOE,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Plaintiff Fernando Romero's Opposed Motion to Amend/Correct the Complaint (Doc. 23) and Defendant Hartford Casualty Insurance Company's ("Hartford") Cross Motion for Judgment on the Pleadings (Doc. 26). Having reviewed the accompanying briefing and being otherwise fully advised, the Court will deny Plaintiff's Motion to Amend and grant in part and deny in part Defendant's Motion for Judgment on the Pleadings.

## I.    PROCEDURAL POSTURE

Plaintiff filed a Complaint against both the company that issued his insurance policy and an individual, identified as John Doe, who he alleges trespassed on his property while acting as Hartford's agent. Plaintiff seeks to recover for the losses he incurred after an armed robbery occurred at Ferny's Electronics on February 11, 2013. (Doc. 1-1.) Plaintiff claims that Hartford engaged in bad faith, unfair practices, and breach of contract for failing to act reasonably under the circumstances to conduct a timely and fair evaluation of his claim and failing to accept and

pay Plaintiff's claim for coverage for the losses after charging and collecting premiums from him. *Id.*

Plaintiff initially brought suit in the New Mexico First Judicial District Court, County of Santa Fe, and Defendant Hartford removed the action to this Court on December 7, 2016. (Doc. 1.) On April 13, 2017, Plaintiff filed a motion to amend his complaint in order to identify the aforementioned John Doe as Wade Mascarenas, the claims contractor assigned to inspect Romero's property by Hartford. (Doc. 23.) On May 11, 2017, Defendant Hartford filed a cross motion to dismiss Plaintiff's claims for Count VI (Trespass), Count IV (Breach of Contract), and Count II (Unfair Practices Act) and opposed amendment of the Complaint on the basis that Plaintiff's trespass claim against Mr. Mascarenas is merely pretext for the purpose of defeating diversity jurisdiction and returning this action to state court. (Doc. 26.) Following extension, the parties filed their respective responses/replies and briefing was completed on July 10, 2017. (*See* Docs. 30, 32, 37, 38.)

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

### A.  Allegations Regarding Insurance Contract and Investigation of Claim

Plaintiff is a New Mexico resident who, while doing business as Ferny's Electronics, conducted business in Albuquerque, Bernalillo County, New Mexico. (Doc. 1-1 at 1.) Hartford, a non-resident insurer authorized to do business in the State of New Mexico, issued a Spectrum business insurance policy to Plaintiff Romero d/b/a Ferny's Electronics (policy number 34 SBA RV0470) that was effective May 4, 2012 through May 5, 2013. (*Id.* at 1–2.) During the effective term of the Insurance Policy, an armed robbery occurred at Ferny's Electronics on February 11, 2013. (*Id.* at 2.) After the armed robbery, Plaintiff was discovered with serious and extensive personal injuries to his brain and skull which required hospitalization and surgery at the

University of New Mexico Hospital. (*Id.*) As a result of these injuries, Plaintiff could no longer generate income from the electronic repair business. (*Id.* at 3.) Additionally, the robbery resulted in extensive damage to the building structure, as well as loss or damage to much of the merchandise available for sale. (*Id.*)

On May 1, 2013, Defendant Hartford notified Plaintiff that it was denying him coverage under the insurance policy for the injuries he sustained and advised him to forward additional information which might alter its coverage decision. (*Id.*) Thereafter, Plaintiff retained counsel and on March 3, 2014, notified Hartford of his intent to pursue claims under the Insurance Policy for damage to the building, personal property losses, and loss of business income, and provided documentation and estimates of the damage to the building and of the personal property losses as well as copies of tax return transcripts for 2008 through 2012 to demonstrate that he was unable to continue with his business. (*Id.*)

On April 4, 2014, Hartford, through a second claims adjuster, advised Plaintiff that the claim was delayed because estimates for damages to the building and supporting documentation for claimed personal property losses had not been received. (*Id.* at 3.) On May 6, 2014, Hartford again requested the documentation in support of the pending claims for damage to Ferny's Electronics, personal property loss, and loss of business income. (*Id.* at 4.) On October 3, 2014, at the request of Hartford, Plaintiff provided a personal property inventory and estimates in support of personal property loss; a structural damages form and estimates in support of structural damages; and a copy of the police report regarding the burglary of February 11, 2013. (*Id.*)

On November 17, 2014, Hartford notified Plaintiff that it had reassigned a third adjuster to handle the pending claims. (*Id.*) After a telephone conference on November 18, 2014, with

representatives for Mr. Romero and Ferny's Electronics, on January 13, 2015, Plaintiff provided Hartford with tax returns for 2012, and copies of sales receipts for December 2012 through January 2013, in support of the claim for loss of business income as requested by Hartford. (*Id*.) On February 12, 2015, Hartford requested that a completed Proof of Loss Sworn Statement be submitted and again requested a list of damaged and/or stolen property along with other previously provided information in support of the pending claims. (*Id*.) On March 30, 2015, Plaintiff again provided information in support of the pending claims for coverage and submitted the executed Proof of Loss Sworn Statement as requested by Hartford. (*Id*.) On April 10, 2015, Hartford again requested estimates in support of the damages to the building and indicated that a request had been made for inspection of the building. (*Id*. at 4–5.) On June 30, 2015, Plaintiff provided additional documentation in support of the pending claims to Hartford. Plaintiff did not receive a response from Hartford to the June 30, 2015 correspondence. (*Id*. at 5.) On July 30, 2015, Plaintiff provided another narrative account of the events leading to the pending claims and a list of the documentation submitted in support of such claims. (*Id*.) Plaintiff requested a value at which Hartford was willing to settle the pending claims. (*Id*.)

On July 30, 2015, Hartford advised Plaintiff that a fourth Hartford adjuster would now handle the claims. (*Id*.) Hartford indicated that the information provided on July 30, 2015 would be provided to the fourth adjuster. *Id*. On August 18, 2015, the fourth adjuster again requested, by telephone, information and documentation regarding the pending claims on behalf of Mr. Romero and Ferny's Electronics. (*Id*.) On September 8, 2015, Plaintiff provided an additional narrative of facts in support of the pending claims. (*Id*. at 6.) Yet again, Plaintiff gave the newest adjuster a complete file of all correspondence and documentation regarding the pending claims. (*Id*.) On September 8, 2015, Plaintiff requested documentation regarding the inspection

conducted solely by Hartford but received no response. (*Id.*) Also on September 8, 2015, Plaintiff notified Hartford that the failure to resolve the claims on behalf of Mr. Romero constituted violations of New Mexico law and demanded an amount to settle the pending claims. Plaintiff requested a response to the demand by September 18, 2015. (*Id.*)

On October 20, 2015, Hartford offered to resolve the claims regarding structural damage and the claims regarding the personal property. (*Id.*) Additionally, Hartford offered to resolve the loss of business income claim for a two-week period of restoration. (*Id.*) The total amount offered was approximately 18.75% of the initial demand. (*Id.*) On November 18, 2015, Plaintiff rejected the offer of settlement proffered by Hartford and demanded another amount to resolve all pending claims. (*Id.*) On December 2, 2015, Hartford offered to resolve the structural damage and personal property loss claims for an amount slightly more than originally claimed for those items. (*Id.*) Hartford offered to continue to negotiate the remaining claims. (*Id.*) On December 4, 2015, Plaintiff accepted the offer to resolve the structural damage and personal property loss claims. (*Id.* at 7.) This settlement expressly preserved the right to pursue the remaining claims. (*Id.*) On April 28, 2016, in response to ongoing discussions regarding the remaining claims, Plaintiff demanded an amount to resolve the claims for loss of business income, trespass, and violations of New Mexico law. (*Id.*) On June 10, 2016, after a telephone inquiry due to Hartford's failure to respond to the April 28, 2016 letter, Hartford offered to resolve the remaining claims on behalf of Mr. Romero for 6.25% of the prior demand. (*Id.*)

## B.  Allegations Regarding Trespass Claim and Motion to Amend

On April 14, 2015, Hartford notified Plaintiff that its agent and/or employee, claims adjuster, John Doe, had "driven by" Ferny's Electronics without the prior approval from or knowledge of a representative on behalf of Mr. Romero or Ferny's Electronics. (Doc. 1-1 at 5.)

On June 30, 2015, Plaintiff requested information regarding the pending inspection indicated in the April 14, 2015 correspondence so a representative on behalf of Mr. Romero and Ferny's Electronics could be present at that time. (*Id*.) During an August 18, 2015 telephone conversation, the fourth adjuster indicated that Defendant John Doe conducted an inspection of Ferny's Electronics. (*Id*. at 5–6.) Hartford provided photographs that Defendant John Doe took during said inspection. (*Id*.) The photographs provided demonstrate that Defendant John Doe trespassed upon the premises. (*Id*. at 6.)

Plaintiff, prior to instituting litigation, requested the identity of the individual who inspected the building in which he operated his business. (Doc. 23 at 2.) Hartford refused to provide the identity of this individual. (*Id*.) After filing suit, Plaintiff served discovery on Hartford and requested the identity of the individual assigned to inspect Plaintiff's property. (*Id*. at 2–3.) Hartford removed the matter to this Court on December 7, 2016, which instituted a stay on discovery. (*Id*. at 3.) Hartford served its Initial Disclosures on February 27, 2017. (*Id*.) A review of the documents provided with the initial discovery reveals that Wade Mascarenas is the individual who was assigned to inspect Mr. Romero's property without permission, and who, was indeed present on Mr. Romero's property. (*Id*.) Thus, Plaintiff now seeks to amend his complaint in order to identify Defendant Doe as Mr. Mascarenas. (*See* Doc. 23.)

### III. LEGAL STANDARDS

#### A. Motions for Judgment on the Pleadings under Rule 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the

pleadings and any facts of which the Court can take judicial notice." *Ramirez v. Wal-Mart Stores, Inc.*, 192 F.R.D. 303, 304 (D.N.M. 2000).

The standard for deciding a motion on the pleadings mirrors the applicable standard for a Rule 12(b)(6) motion to dismiss. *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013). Under Rule 12(b)(6), the Court accepts only the well-pleaded factual allegations as true, viewing them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). Thus, the Court need only evaluate allegations "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Following these principles, the Court considers whether the facts "plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677–78).

### B. Amending a Complaint and Joinder of Parties

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." Unlike the good cause requirements under Rule 16, this standard has been described as lenient and easily reached. *Rowen v. New Mexico*, 210 F.R.D. 250, 252 (D.N.M. 2002); *Youell v. Russell*, Civ. No. 04-1396 JB/WDS 2007 WL 709041, at *1 (D.N.M. February 14, 2007). Under this rule, leave to amend should be granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

However, once removed to federal court, proposed amendments to the complaint seeking to join additional defendants whose joinder would destroy subject matter jurisdiction are governed by 28 U.S.C. § 1447(e) rather than FRCP Rule 15. *See McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). Under Section 1447(e), the Court has discretion to determine whether it will allow the plaintiff to join additional defendants whose joinder would destroy subject matter jurisdiction. 28 U.S.C. § 1447(e). Further, under FRCP Rule 19, this Court must determine whether or not the party sought to be joined is indispensable. If so, "Rule 19 requires the court either to join the party, in which case remand is necessary under § 1447(e), or to deny joinder, in which case Rule 19(b) also requires that the action be dismissed. If the defendant is not indispensable, Rule 20(a)(2) permits joinder at the discretion of the district court." *McPhail*, 529 F.3d at 951–52.

## IV.    PLAINTIFF'S MOTION TO AMEND

Plaintiff seeks to amend his Complaint to specify that the John Doe Defendant is Wade Mascarenas, a New Mexico resident and the claims contractor assigned to inspect Romero's property by Hartford. (Doc. 23.) As such, the addition of Mr. Mascarenas as a party would defeat diversity jurisdiction and mandate remand to the New Mexico state court. *See* 28 U.S.C. § 1332(a)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Accordingly, amendment is not a matter of right but rests within the discretion of this court unless the party sought to be added is indispensable. *See* Fed. R. Civ. P. 19; 28 U.S.C. § 1447(e). Further, in exercising discretion in whether to allow amendment, this Court must consider various relevant factors, including: whether the amendment will result in undue prejudice; whether the request was unduly and inexplicably delayed; whether it was offered in good faith; the extent to which the purpose of the amendment is to defeat federal jurisdiction; whether plaintiff has been dilatory in asking for

amendment; whether plaintiff will be significantly injured if amendment is not allowed; and any other factors bearing on the equities. *McPhail*, 529 F.3d at 952; *Culver v. Lithia Motors, Inc.*, No. CV 15-669 MCA/SCY, 2016 WL 7426587, at *5 (D.N.M. May 12, 2016).

### A. Indispensable Party

To determine whether an absent party must be added, the Court must first determine whether the party is necessary to the suit and must therefore be joined if joinder is feasible. *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). "If the absent party is necessary and indispensable but cannot be joined, then the suit must be dismissed. *Id*. Whether Mr. Mascarenas is a necessary party under Rule 19 requires assessment of three factors: "(1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations." *Rishell*, 94 F.3d at 1411.

With regard to the first factor, Tenth Circuit case law has consistently held that a non-diverse agent like Mr. Mascarenas is not indispensable for purposes of complete relief where the principal was already included as a defendant. *See*, *e.g.*, *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997) (adopting the 7th Circuit's holding that an agent whose conduct was challenged was not an indispensable party); *Milligan v. Anderson*, 522 F.2d 1202, 1204–05 (10th Cir. 1975) (holding that even though a principal and his agent are both involved in allegedly wrongful acts, the agent was not an indispensable party to an action arising out of those acts); *Quintana v. State Farm Mut. Auto. Ins. Co.*, No. 14CV00105 WJ/GBW, 2014 WL 12638855, at *2 (D.N.M. Apr. 14, 2014) (finding an employee of the defendant insurer was not indispensable because complete relief could be attained from the principal employer). Here,

Plaintiff claims that Mr. Mascarenas trespassed on his property as an agent of Defendant Hartford in order to investigate the veracity of his insurance claim. If Plaintiff's claim is true, Hartford will be vicariously liable for complete relief for damages stemming from the trespass. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment").

Turning to the second factor, courts in this district and elsewhere have similarly held that the principal-agent relationship between an insurance company and an employee or other agent means that the agent's interests would not be impaired by their absence as a party because the principal can adequately protect the agent's interests in order to avoid the principal's own liability. *Quintana*, 2014 WL 12638855, at *2 ("the Court finds that Mr. Valdez' interests will be protected adequately by State Farm, because State Farm has an interest in protecting Mr. Valdez' rights, as Mr. Valdez . . . was acting in the scope of his employment during his interactions with Plaintiff"); *see also Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 502 (7th Cir. 1980). Consistent with these holdings, Defendant Hartford has conceded that Mr. Mascarenas visited Plaintiff's property at its behest and has moved to protect their shared interests by arguing that Mr. Mascarenas was authorized to be present at the scene in order to investigate Plaintiff's insurance claim. (Doc. 26 at 6–11.) Thus, there is no impaired interest that makes Mr. Mascarenas indispensable.

Finally, the absence of Mr. Mascarenas will not subject Hartford to a substantial risk of multiple or inconsistent obligations. *See Quintana*, 2014 WL 12638855, at *2. While it is theoretically possible for a subsequent state court proceeding to reach a conflicting factual conclusion on Mr. Mascarenas's authorization to be on Plaintiff's property, this Court's decision

is the only one which would affect Hartford's obligation to Plaintiff for the underlying conduct of its agent. *See*, *e.g*, *Blumberg v. Gates*, 204 F.R.D. 453, 455 (C.D. Cal. 2001) ("multiple and inconsistent adjudications are not the same as inconsistent *obligations*[;] . . . 'a risk of inconsistent adjudications or results does not necessitate joinder of all of the parties into one action pursuant to Fed. R. Civ. P. 19(a).'") (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).  Thus, Mr. Mascarenas is not indispensable under the third prong of the inquiry.

As Mr. Mascarenas is not a necessary or indispensable party under Rule 19, this Court must next exercise its discretion under 28 U.S.C. § 1447(e) to determine whether to allow Plaintiff's amendment to join him.

### B.  Discretionary Factors for Joining Non-Diverse Party

As noted above, this Court must consider several relevant factors in determining whether to allow joinder of a non-diverse party. These factors include: whether plaintiff has been dilatory/unduly delayed in asking for amendment; whether amendment was offered in good faith vs. the extent to which the purpose of the amendment is to defeat federal jurisdiction; whether plaintiff will be significantly injured/unduly prejudiced if amendment is not allowed; and any other factors bearing on the equities. *McPhail*, 529 F.3d at 952; *Culver*, 2016 WL 7426587, at *5.

### i.  Undue Delay/ Dilatory filing

In addressing whether Plaintiff was dilatory in seeking to join Mr. Mascarenas as a defendant, "district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between the removal and the amendment." *Schindler v. Charles Schwab & Co.*, No. CIV.A.05-0082, 2005 WL 1155862, at *4

(E.D. La. May 12, 2005). Here, Plaintiff sought amendment of his Complaint more than five months after commencement of his action in state court and over four months after removal of the action to federal court. (*See* Docs. 1; 1-1; 23.)

With regard to the first factors, there is no bright line regarding how long after filing or removal a motion to amend becomes dilatory. Persuasive authority from within this Circuit seems to establish that amending within a few weeks to a few months was not undue delay, while waiting more than four months after removal constitutes dilatory filing. *Compare Pacely v. Lockett*, No. 212CV00152MCASMV, 2013 WL 12136690, at *9 (D.N.M. Mar. 30, 2013) (Plaintiff was not dilatory in amending complaint where it was filed only two weeks after removal); *Reigel v. Canyon Sudar Partners, L.L.C.*, No. CIV.A. 07-CV-00595MS, 2007 WL 3274430, at *4 (D. Colo. Nov. 5, 2007) (amendment not dilatory where they sought to amend their Complaint less than one month after the case was removed, approximately three months after the case was commenced); *with Grabau v. Target Corp.*, No. CIVA06CV01308WDMPAC, 2006 WL 3838218, at *2 (D. Colo. Dec. 26, 2006) (motion to amend was dilatory when filed four and a half months after removal). However, district courts in other jurisdictions have been more conflicting, with some holding that delays as short as two months make a motion to amend dilatory, while others state that delays longer than five months do not. *Compare Ellsworth, LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing, Inc.*, No. Civ. A. 03–0613, 2003 WL 21783304, at *3 (E.D. La. July 30, 2003) (holding that a plaintiff was dilatory in waiting two months after filing the complaint and nearly thirty days after removal before filing a motion for leave to amend); *Phillips v. Delta Airlines, Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001) (same); *with Vincent v. E. Haven Ltd. P'ship*, No. 02-2904, 2002 WL 31654955, at *3 (E.D. La. Nov. 20, 2002) (holding that amendment sought five months after petition was not dilatory);

*Lowe v. Singh*, No. CIV.A. H-10-1811, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010) (six month lapses between the filing in state court and Plaintiff's request to amend was not undue delay).

While these timeframes do not weigh definitively for either party, other factors establish that Plaintiff was not dilatory in bringing his motion to amend. First, Plaintiff's Complaint made clear from the outset that he was pursuing a trespass claim against an agent of Defendant Hartford. (Doc. 1-1.) Further, Plaintiff's well-pled factual allegations establish that he made unsuccessful efforts to ascertain the identity of the individual who inspected his business prior to removal. (Doc. 23 at 2-3.) Following removal to this Court, Hartford served its Initial Disclosures on February 27, 2017, which revealed that Mr. Mascarenas was the individual assigned to inspect Mr. Romero's property. (*Id*.) Plaintiff's motion to amend was thus brought within 1½ months of learning the identity of John Doe. (Doc. 23.) Accordingly, Plaintiff's efforts to learn the identity of John Doe as well as the relatively short period between when he learned Mr. Mascarenas's identity and when he filed his motion to amend weigh in Plaintiff's favor.

    ii.    <u>Good Faith/ Facial Validity of Plaintiff's Trespass Claim</u>

The Court will first address whether Plaintiff's Trespass claim against Mr. Mascarenas was brought in good faith or merely as a pretext for the purpose of defeating diversity jurisdiction. In resolving this question "courts take into account considerations such as whether the plaintiff knew or should have known the identity of the nondiverse defendant when the state court suit was filed, whether the plaintiff states a valid claim against the nondiverse defendant, and the timing of the amendment." *Agyei v. Endurance Power Prod., Inc.*, 198 F. Supp. 3d 764, 770 (S.D. Tex. 2016). Regarding the first inquiry, there is no indication that Plaintiff knew or should have known the identity of Mr. Mascarenas when the state court suit was filed. The fact

that he was aware of the underlying allegation of trespass and included a John Doe Defendant in his complaint seems to support his position that he was unaware of Mr. Mascarenas's identity until after discovery following removal to federal court. (*See* Docs. 1-1 at 10; 23 at 2–3.) Taken as true, these assertions would support a finding that the claim was brought in good faith. Similarly, the timing of Plaintiff's motion to amend under the third inquiry is not unusually suspect, as his claim against a John Doe was brought in state court and he did not immediately seek to add Mr. Mascarenas and remand upon removal, but continued to litigate his claim in federal court. (*See* Docs. 1-1 at 10; 1; 23.)

Defendant Hartford correctly notes, however, that the facial validity of Plaintiff's trespass claim weighs decisively against a finding of good faith. Under normal circumstances, the threshold question of jurisdiction must be resolved before reaching the merits of Plaintiff's underlying claim. *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). In the context of joining a non-diverse party, the validity of the claim is inextricably linked to the question whether the Court retains jurisdiction, since "when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into litigation is to destroy diversity jurisdiction." *Lowe v. Singh*, No. H-10-1811, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010). Under New Mexico common law, "[a] trespass consists of an unauthorized entry upon the land of another." *Montes v. Gallegos*, 812 F. Supp. 1165, 1170 (D.N.M. 1992) (citing *North v. Pub. Serv. Co. of N.M.*, 608 P.2d 1128, 1129 (N.M. Ct. App. 1980)). Here, neither party disputes that Mr. Mascarenas entered Plaintiff's land in order to investigate his insurance claim. (*See* Docs. 23 at 2–3; 26 at 6–9.) Thus, whether his conduct constituted the tort of trespass turns upon whether his entry was unauthorized. *See Montes*, 812 F. Supp. at 1170.

The parties dispute this point. Plaintiff asserts that neither Mr. Mascarenas nor Hartford ever sought or received his explicit permission to enter his property for purposes of investigating his claim. (Docs. 1-1 at 10; 23 at 2–3.) By contrast, Defendant Hartford contends that Plaintiff gave implicit consent by the terms of his insurance policy, which permits it access to the property for purposes of investigation when a claim is made. (Docs. 26 at 9–10; 37 at 4–5.) The parties do not disagree on the wording of the policy, which states in relevant part:

> 3. Duties In The Event Of Loss or Damage
> You must see that the following are done in the event of loss of or damage to Covered Property:
> [. . .]
> > f. Permit us to inspect, the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

(Doc. 1-2 at 44; *see also* Docs. 32 at 3; 37 at 4–5.[1]) Given the clarity of the obligation imposed by this text,[2] the Court is unpersuaded by Plaintiff's strained reading that Defendant was required to seek his explicit consent to enter his property despite Plaintiff's obligation to allow Hartford to inspect the property under the terms of the contract. (*See* Doc. 32 at 3.) As Plaintiff was required by the terms of his policy to allow Defendant's representative to enter his property in the event of loss or damage, Plaintiff's decision to file a claim which Defendant was obligated to investigate provided consent for Defendant to perform such investigation. *See, e.g*, *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 959 (N.M. Ct. App. 2013) ("In deciding whether

---

[1] While the examination of external evidence is not normally part of evaluating a motion for judgment on the pleadings, this contract language has been incorporated within the pleadings of both parties. Because it is an undisputed material fact, it is appropriately analyzed under rule 12(c). *See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1049 (D.N.M. 2016).

[2] If a contract is unambiguous on the point in question, the issue can be decided in this motion for judgment on the pleadings. *Carreon v. GoodTimes Wood Prod., Inc.*, No. CIV 09-161 BB/CEG, 2010 WL 11497057, at *2 (D.N.M. May 20, 2010).

to pay a claim, the insurance company must . . . conduct a timely and fair investigation"). Accordingly, Plaintiff's claim for trespass is not facially valid.

      iii.     <u>Plaintiff's Injury/Prejudice if Amendment is not Allowed</u>

 With regard to the third discretionary factor, the Court finds that Plaintiff will not suffer significant injury or prejudice if he is not allowed to amend the Complaint to add Mr. Mascarenas. As an initial matter, the Court has already determined that the underlying trespass claim Plaintiff seeks to levy against Mr. Mascarenas is not facially valid because Plaintiff's agreement with Hartford required him to allow their agent to investigate the premises. Moreover, even presuming a valid claim, Plaintiff could obtain complete relief without the addition of Mr. Mascarenas, as Defendant Hartford would be vicariously liable for the conduct of its agent. *See Meyer*, 537 U.S. at 285. Accordingly, this factor weighs against allowing the addition of a party which would defeat this Court's diversity jurisdiction.

Having analyzed the applicable factors under 28 U.S.C. § 1447(e), the Court will exercise its discretion to deny Plaintiff's motion to amend his Complaint in order to join a non-diverse party (Doc. 23).

**V.    DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

Having determined that the parties to this suit possess the complete diversity necessary to retain federal jurisdiction, this Court is now free to address the merits of Defendant's Motion for Judgment on the Pleadings (Doc. 26). *Montoya*, 296 F.3d at 955. Defendant Hartford moved for judgment on the pleadings as to Plaintiff's Count VI (Trespass), Count IV (Breach of Contract), and Count II (Unfair Practices Act).

Ultimately, the Court concludes that Plaintiff's pleadings fail to state a valid claim for relief as to Count VI (Trespass) and Count II (Unfair Practices Act), but that material factual disputes requiring extrinsic evidence preclude judgment as to Count IV (Breach of Contract).

## A. Plaintiff's Claim for Trespass (Count VI)

As discussed above, Plaintiff has failed to state a valid claim for trespass, entitling Defendant to judgment as a matter of law. As noted, a claim for trespass requires proof of an unauthorized entry upon the land of another. *Montes*, 812 F. Supp. at 1170; *North*, 608 P.2d at 1129. It is undisputed that Mr. Mascarenas entered Plaintiff's property and took photographs as an agent of Hartford. (*See* Docs. 23 at 2–3; 26 at 6–9.) However, the plain language of the parties' insurance agreement, as included in their pleadings, obligates Plaintiff to permit Hartford and its agents to inspect the insured property in the event of loss or damage. (Doc. 1-2 at 44; *see also* Docs. 32 at 3; 37 at 4–5.) Accordingly, Plaintiff's filing of a claim for loss constituted consent for Hartford to inspect the property, as he was required to allow under the express terms of the contract. The undisputed material facts establish that Plaintiff has failed to state a claim for relief as to Count VI, and judgment for Defendant is proper as a matter of law. *See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1049 (D.N.M. 2016); *Ramirez*, 192 F.R.D. at 304.

## B. Plaintiff's Claim for Breach of Contract (Count IV)

Under New Mexico Law, "a complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *Res. Assocs. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d

1200, 1246 (D.N.M. 2016) (quoting *McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 1978)).

The parties do not dispute the existence of a contractual agreement for insurance coverage between Plaintiff and Defendant Hartford. (*See* Docs. 1-2 at 44; 32 at 3; 37 at 4–5.) Instead, Defendant claims that Plaintiff cannot demonstrate a breach on its part, as the insurance policy does not cover the loss for which Plaintiff seeks recovery. (*See* Doc. 26 at 12–15.) Specifically, Defendant Hartford argues that Plaintiff's policy provides coverage for business income benefits, but only entitles him to payment for the amount of time it reasonably takes to make repairs to the physically damaged property. (*Id.*) By contrast, Defendant asserts that Plaintiff's policy does not entitle him to payment for business losses stemming from his own physical injuries and inability to work. (*Id.* (citing Doc. 1-2 at 25–49).) However, whether or not this interpretation of the policy is correct, material disputes preclude judgment on the pleading.

As noted, it is undisputed that the policy provides coverage of lost business income for the period required to make physical repairs to the damaged property. (*See* Docs. 26 at 14–15; 32 at 3–4.) It is also undisputed that Plaintiff suffered damage to his property as a result of the robbery which required an eight week period to make repairs. (Docs. 26 at 14; 32 at 4.) However, the parties dispute whether Hartford actually paid Plaintiff for this period, as required by their contract. (*Compare* Doc. 26 at 14 ("Because Plaintiff's business did sustain some property damage during the robbery, Hartford paid for eight weeks of business income benefits—the period during which the property damage could be repaired") *with* Doc. 32 at 4 ("Defendant Hartford erroneously asserts that it paid Mr. Romero the business income losses he incurred for a two-month restoration period. That is simply not the case.").) This dispute involves a question of fact, the resolution of which requires extrinsic evidence not incorporated

into the pleadings.[3] Accordingly, Judgment is not appropriate under Rule 12(c). *See Am. Mech. Sols.*, 184 F. Supp. 3d at 1049; *Ramirez*, 192 F.R.D. at 304.

### C.    Plaintiff's Claim for Breach of the Unfair Practices Act (Count II)

#### i.   Merits of Plaintiff's Present UPA Claim

Plaintiff in Count II claims that Defendant Hartford engaged in deceptive practice in violation of the New Mexico Unfair Practices Act, 1978 § 57-12-2(D). This statute defines an unfair or deceptive trade practice as:

> a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person . . . .

N.M. Stat. Ann. § 57-12-2(D). This statute also includes a detailed list of examples and contexts in which unfair or deceptive trade practices may occur. *Id*. Of relevance to the present claim, this list includes "failing to deliver the quality or quantity of goods or services contracted for."  N.M. Stat. Ann. § 57-12-2(D)(17). Plaintiff claims that he has sufficiently stated a claim under this law by alleging that Hartford's "failure to accept and pay [Mr. Romero's] claim for coverage . . . after charging and collecting premiums from [him] is a failure to deliver the quality of services contracted for by [Mr. Romero]." (Doc. 32 at 5 (quoting Doc. 1-1 ¶ 51).) However, Defendant correctly notes that simply stating that a dispute involves a failure to deliver the quality of

---

[3] Defendant attempts to remedy this factual dispute by presenting extrinsic evidence of its alleged payment as an exhibit to its Reply. (*See* Doc. 37-1 at 2.) However, the appropriate method for resolving this dispute is for Defendant to provide such evidence as an attachment to a motion for summary judgment on this count and allow Plaintiff the opportunity to respond with contrary evidence, if any exists. *Compare, e.g. Durkin v. Equifax Check Servs., Inc.*, No. 00 C 4832, 2003 WL 22078331, at *1 (N.D. Ill. Sept. 8, 2003) ("it is not the province of the court to weigh extrinsic evidence (or the lack thereof) when reviewing a motion brought pursuant to rule 12(c)") *with Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) (a motion must be treated as a Rule 56 motion  for summary judgment where the court considers materials outside the pleadings).

services contracted for does not relieve a party of its obligation to plead facts showing that a defendant knowingly made a false or misleading representation in connection with the sale of the goods or services in question. *See* N.M. Stat. Ann. § 57-12-2(D); *see also Dellaira v. Farmers Ins. Exch.*, 102 P.3d 111, 117 (N.M. Ct. App. 2004). Indeed, an assertion of failure to deliver the quality of services contracted for constitutes a mere breach of contract which, while actionable in its own right under common law, does not invoke the statutory protections of the Unfair Practices Act, which require "a false or misleading . . . statement [made] . . . *knowingly*." N.M. Stat. Ann. § 57-12-2-(D) (emphasis added). Here, Plaintiff's Complaint is devoid of any specific allegations of false or misleading statements by Hartford at the time the parties contracted for the sale of an insurance policy. (*See* Doc. 1-1 at 7–8.) Thus, Plaintiff has failed to state a claim upon which relief may be granted as to this Count, and Defendant is entitled to judgment on the pleadings.

ii.  Plaintiff's Request to Amend his UPA Claim

While defending the sufficiency of his Unfair Practices Act claim as stated in his Complaint, Plaintiff nonetheless requests that, in the event that his claim is found to be deficient, he be allowed to amend the Complaint in order to plead with specificity the misrepresentations made by Hartford during the sale of the insurance policy. (Doc. 32 at 5.) Plaintiff claims that Hartford will suffer no prejudice from such an amendment, as it has been on notice of Plaintiff's Unfair Practices Act claim and minimal discovery has taken place. Defendant Hartford opposes allowing such amendment, stating that the deadline for permissive amendment has passed and Plaintiff has not shown good cause or diligent efforts to comply with the deadline. Defendant further claims prejudice because it was not on notice of any underlying fact supporting a claim under the Unfair Practices Act.

It is clear that the April 14, 2017 deadline set by this Court for amendment of the Complaint had passed prior to Plaintiff's June 12, 2017 request to amend this Count. (*See* Docs. 16; 32 at 5.) Once a scheduling order's deadline for amendment has passed, the following analysis is required:

> [A] movant must first demonstrate to the court that it has 'good cause' for seeking modification of the scheduling deadline under Rule 16(b). If the movant satisfies Rule 16(b)'s 'good cause' standard, it must then pass the requirements for amendment under Rule 15(a). . . . Rule 16(b)'s 'good cause' standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997)).

Plaintiff has provided no explanation as to why his amendment could not have been filed with diligent effort prior to the deadline. (*See* Doc. 32.) Plaintiff cites no newly discovered facts or any applicable change in the law or circumstances. *See, e.g. Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). Indeed, any false representations made to Plaintiff by Hartford would presumably have been known to Plaintiff prior to the filing of his original Complaint. Accordingly, Plaintiff's failure to abide by the requirements for recovery under the Unfair Practices Act and plead facts consistent with those requirements does not constitute good cause for allowing amendment at this stage of the litigation. *See Colo. Visionary Acad.*, 194 F.R.D. at 687. For this reason, Plaintiff's request to amend this claim is denied. *See* Fed. R. Civ. P. 16.

## V.     CONCLUSION

For the foregoing reasons, the Court will: (1) deny Plaintiff's Motion to amend his Complaint in order to join a non-diverse Defendant; (2) grant Defendant's Rule 12(c) Motion for Judgment on the Pleadings as to Count VI (Trespass) and Count II (Unfair Practices Act); and (3) deny Defendant's Motion as to Plaintiff's Count IV (Breach of Contract).

**THEREFORE**

**IT IS ORDERED** that Plaintiff's Motion to Amend the Complaint (Doc. 23) is **DENIED** and Defendant Hartford's Cross Motion for Judgment on the Pleadings (Doc. 26) is **GRANTED in Part and DENIED in Part**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**